UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00038-KDB-DSC

| | |
|---|---|
| TIMOTHY TRIMBLE, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>AT&T MOBILITY LLC, )<br>)<br>Defendant. ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant AT&T Mobility LLC's ("AT&T" or "Defendant") "Motion to Compel Arbitration," (Doc. No. 7) as well as the parties' briefs and exhibits. (Doc. Nos. 8, 9, 12, & 16).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, Defendant's Motion to Compel Arbitration is **GRANTED**.

### I. FACTUAL BACKGROUND

Defendant AT&T is a large wireless telecommunication company, and Plaintiff alleges he has been Defendant's customer since 2013. (Doc. No. 1 ¶¶ 2, 10). As part of its services, Defendant collects various personal data including customer's names, social security numbers, financial information, phone numbers, and driver's license numbers. (Id. ¶ 17). Defendant announced in March 2023 that approximately nine million customer accounts, including personal

data, had been comprised during a data breach that occurred sometime in January 2023. (Id. ¶¶ 1, 27-30). Plaintiff alleges that the data breach exposed a class of customers, including himself, to identity theft and fraud, which resulted in damages. (Id. ¶¶ 38-39, 60).

Plaintiff further claims that Defendant had a history of data breaches and cybersecurity deficiencies, and failed to address these issues. (Id. ¶ 41-59). Plaintiff therefore alleges causes of action for negligence, negligence *per se*, breach of confidence, invasion of privacy, breach of implied and express contracts, unjust enrichment, violation of 28 U.S.C. §§ 2201 et seq., and violation of N.C. Gen. Stat. § 75-60. (Id. ¶ 83-185). Defendant asserts that Plaintiff is bound to arbitrate these claims based on his contractual relationship with AT&T. (Doc. Nos. 7, 8, 9 & 16).

## II. DISCUSSION

### A. Standard of Review

The Federal Arbitration Act ("FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3. The Supreme Court has described the FAA as "a liberal federal policy favoring arbitration." AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). "[C]ourts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotations omitted). When reviewing a motion to compel arbitration, courts construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Forshaw Indus., Inc. v. Insurco, Ltd., 2 F. Supp. 3d 772, 785 (W.D.N.C. 2014); see also Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021) (collecting cases).

B. **Defendant's Motion to Compel Arbitration**

Plaintiff argues that the agreement to arbitrate is unenforceable and the claims are outside the scope of the arbitration provision.[1] (Doc. No. 12 at 7-9 and 11-16). As a result, the Court examines whether there is a valid written agreement to arbitrate and, if so, whether the dispute in question falls within the scope of the agreement to arbitrate. Chorley Enters., Inc. v. Dickey's Barbecue Rest., Inc., 807 F.3d 553, 563 (4th Cir. 2015); see also Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

1. **Validity of the Agreement**

The Court first addresses whether there was a valid agreement to arbitrate. State law governs validity of contracts. Am. Gen. Life & Accident. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citing Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005)).[2] Here, on February 13, 2021, Plaintiff placed an order with AT&T for an equipment upgrade. (Doc. No. 9 ¶ 5). On that same day, Plaintiff electronically signed and accepted AT&T's Wireless Customer Agreement. (Id. at 6; Doc. No. 9-2). Specifically, Plaintiff agreed that he "reviewed and agree[d] to the rates, terms, and conditions for the wireless products and services described in the Wireless

---

[1] Plaintiff also contends that Defendant is attempting to enforce the Arbitration Agreement against non-signatories through equitable estoppel. (Doc. No. 12 at 10). However, Defendant specifically alleges that Plaintiff signed the Wireless Customer Service Agreement, which included the Arbitration Provision. (Doc. No. 8 at 11). Additionally, Defendant alleges, and Plaintiff does not dispute, that he assented to the Consumer Service Agreement, including the Arbitration Provision, by continued use of his AT&T service after December 2022. Plaintiff does not appear to dispute formation of the Arbitration Agreement, but rather argues unconscionability. (Doc. No. 12 at 11-16). Given this, the Court finds the equitable estoppel argument without merit.

[2] The parties' contract provides that "[t]he law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law." (Doc No. 9-4 Ex. C, at 40; Doc. No. 9-9 at 9). Accordingly, North Carolina law applies. (Doc. No. 1 ¶ 10).

3

Customer Agreement (including limitation of liability and <u>arbitration provisions</u>)." (Doc. No. 9-2) (emphasis added). That Wireless Customer Agreement provided notice of an arbitration provision in the introduction, and later Section 2.1 states:

> **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction . . . Any arbitration under this Agreement will take place on an individual basis**; **class arbitrations and class actions are not permitted**.

(Doc. No. 9-4 at 13-14) (emphasis in original). Next, Section 2.2 of the Wireless Customer Agreement includes the following provision:

> AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . . . **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action**.

(<u>Id.</u> at 14) (emphasis in original). The Wireless Customer Agreement also states: "All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision are for the court to decide." (<u>Id.</u> at 15).

In connection with Plaintiff's February 13, 2021 upgrade, AT&T sent Plaintiff by email a "Customer Service Summary," which provided a summary of the transaction, including, under the heading "IMPORTANT INFORMATION – SERIVCE AGREEMENTS," that Plaintiff's "agreement(s) with AT&T for the above Wireless Numbers consists of: 1. The Wireless Customer Agreement . . . and its arbitration clause . . . ." (Doc. No. 9 ¶ 7; Doc. No. 9-3 at 13).

In October 2022, AT&T provided, in two different forms, notice to Plaintiff of changes to its terms of service, including an updated Consumer Service Agreement, that would become

4

effective December 2022, which included changes to the Arbitration Agreement. (Doc. No. 9 ¶ 9; Doc. No. 9-6 at 2; Doc. No. 9-7). Both forms of notice in October 2022, as well as the updated Consumer Service Agreement itself, informed Plaintiff that by continuing to use his AT&T services, Plaintiff agreed to be bound by the updated agreement. (Doc. No. 9-9 at 2). Defendant asserts that Plaintiff had an opportunity to reject this updated agreement, but that Plaintiff never rejected the updated terms and after December 2022, he continued using his AT&T service. (Doc. No. 9 ¶ 12; Doc. No. 16 at 8).

The updated Consumer Service Agreement's introduction similarly provides notice of the Arbitration Agreement in the introduction in bold letters, and later Section 1.3.1 states:

> This part of the Agreement outlines how disputes between you and AT&T will be resolved through our informal dispute resolution process, individual arbitration, or small claims court . . . . **You and AT&T agree that arbitration will take place on an individual basis. Class arbitrations, class actions, and representative actions are not permitted. This means that you and AT&T will neither file a lawsuit (in any court other than small claims court), nor pursue or participate in an action seeking relief on behalf of others**.

(Doc. No. 9-9 at 3) (emphasis in original). Section 1.3.2.1 also contains an arbitration provision which provides in part:

> To the greatest extent permitted by law, AT&T and you agree to arbitrate all disputes and claims between you and AT&T, except for claims arising from bodily injury or death. This arbitration provision is intended to be broadly interpreted. It includes, but is not limited to: . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory . . . . **By entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action**.

(Id.) (emphasis in original). The Consumer Service Agreement states that "[a]ll issues are for the arbitrator to decide, except only a court can decide [among others] . . . issues relating to the scope [and] . . . whether a dispute can or must be brought in arbitration" (the Wireless Customer Agreement and updated Consumer Service Agreement arbitration provisions together referred to

5

herein as the "Arbitration Agreement" or "Arbitration Provision"). (Id. at 4).

Based on the plain language of the agreements and the actions of Plaintiff through his signature and continued use of Defendant's services, the Court finds Plaintiff and AT&T formed a valid contract which included an Arbitration Agreement in which Plaintiff agreed to arbitrate certain disputes and claims with AT&T. See Concepcion, 563 U.S. at 344-52 (concluding class action waiver in arbitration agreement was valid and enforceable preempting state law to the contrary).

Plaintiff urges the Court not to enforce the Arbitration Agreement on the grounds of procedural and substantive unconscionability. Under North Carolina law, unconscionability is an affirmative defense, in which case it places the burden on the party arguing unconscionability to show that the agreement is invalid. Tillman v. Com. Credit Loans, Inc., 655 S.E.2d 362, 369 (N.C. 2008)). A party asserting that a contract is unconscionable must show both procedural and substantive unconscionability. Mansfield v. Vanderbilt Mortg. and Fin., Inc., 29 F. Supp. 3d 645, 653 (E.D.N.C. June 16, 2014) (citing Tillman, 655 S.E.2d at 370). Procedural unconscionability involves "unfair surprise, lack of meaningful choice, and an inequality of bargaining power" whereas substantive unconscionability, "refers to harsh, one-sided, and oppressive contract terms." Tillman, 655 S.E.2d at 370 (citing Rite Color Chem. Co. v. Velvet Textile Co., Inc., 411 S.E.2d. 645, 649 (N.C. Ct. App. 1992)). A bargaining power imbalance alone cannot show procedural unconscionability as if it could, most contracts between individuals and corporations would be facially invalid. Westmoreland v. High Point Healthcare Inc., 721 S.E.2d 712, 717 (N.C. Ct. App. 2012).

Here, Plaintiff electronically signed and accepted the Wireless Customer Agreement, which specifically acknowledged the Arbitration Provision to which he agreed. (Doc. No. 9 ¶ 5;

Doc. No. 9-2). Plaintiff received notices by email and on billing statements of the Arbitration Provision. (Doc. Nos. 9-2, 9-3, 9-4, 9-5, 9-6, 9-7, 9-8, & 9-10). Plaintiff now submits that the Arbitration Agreement was a contract of adhesion, and the terms are oppressive and unfair. (Doc. No. 12 at 12-13). The Court finds these arguments unpersuasive.

As noted, Plaintiff cannot show an agreement is procedurally unconscionable solely because of an imbalance of power. Westmoreland, 721 S.E.2d at 717; Concepcion, 563 U.S. at 346-47 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Moreover, the terms of the Arbitration Agreement here are not so oppressive or one-sided as to render them substantively unconscionable. Rather, they provide that the arbitrator is to be neutral, both sides have equal power to invoke the Arbitration Provision, and there is nothing to indicate that Defendant would have an unfair advantage in the arbitration setting. See Hodge v. Toyota Motor Credit Corp., No. 1:22-cv-00001-MR-WCM, 2022 WL 2195022, at *6 (W.D.N.C. June 17, 2022).

Plaintiff further argues that the Arbitration Agreement is overly broad and opens consumers up to litigation involving claims they could not have reasonably foreseen at the time of formation. Id. at 13. However, as noted, the Arbitration Agreement is not so oppressive or one-sided for the Court to find it unconscionable. Further, simply because an arbitration provision is broad, does not mean that it is unconscionable. Commc'ns Workers of Am., 475 U.S. at 650; Levin v. Alms and Associates, Inc., 634 F.3d 260, 267 (4th Cir. 2011); Cara's Notions, Inc. v. Hallmark Cards Inc., 140 F.3d 566, 569 (4th Cir. 1998). Courts in this District have routinely found that similar arbitration provisions were not unconscionable. See Hodge, 2022 WL 2195022, at *2, *6; Holden v. AT&T Corp., Bellsouth Telecomms., LLC., No. 1:12-cv-341, 2013 WL 444031, at *5, *8 (W.D.N.C. Feb. 5, 2013) (upholding a nearly identical provision that was also

7

between a consumer and AT&T); see also Granados v. LendingTree, LLC, No. 3:22-cv-00504-MOC-DSC, 2023 WL 1481545, at *3 (W.D.N.C. Feb. 2, 2023) (rejecting argument that arbitration agreement was invalid due to lack of mutual assent), aff'd, 2023 WL 2672830, at *1 (W.D.N.C. Mar. 28, 2023) (adopting the Memorandum and Recommendation on the grounds that the arbitration agreement was broad enough to include the dispute and the plaintiff was on constructive notice of the agreement); Dixon v. Wilora Lake Healthcare LLC, No.3:17-cv-00713-FDW-DCK, 2018 WL 792065, at *1, *3-*4 (W.D.N.C. Feb. 8, 2018) (compelling arbitration when arbitration clause included "any dispute or controversy arising under or in connection with this [a]greement.").

Plaintiff relies on Mey v. DIRECTV, LLC to support his argument that the Arbitration Agreement at issue should be found unconscionable. No. 5:17-cv-179, 2021 WL 973454 (N.D. W. Va. Feb. 12, 2021). However, Mey applied West Virginia law rather than North Carolina law and is factually distinguishable. In Mey, DIRECTV, LLC, an affiliate of AT&T that provides television services, attempted to enforce an arbitration clause that was contained in an agreement for wireless telephone services between AT&T and the plaintiff and which was formed before DIRECTV LLC became an affiliate of AT&T. Id. at *6. In that case, the district court, applying West Virginia law, found the contract was unconscionably overbroad because plaintiff did not agree to the arbitration agreement as to yet unacquired corporate affiliates. Id. at *9.[3] In comparison here, Plaintiff contracted with and agreed to the Arbitration Agreement with AT&T, and AT&T seeks to enforce the Arbitration Agreement. Defendant also provided notice to Plaintiff of the terms of the Arbitration Agreement, and Plaintiff never objected to them.

---

[3] Prior to the 2021 district court decision, the Court notes that the Fourth Circuit issued an order on Mey, which vacated and remanded the district court's earlier decision from 2018. Mey v. DIRECTV, LLC, 971 F.3d 284 (4th Cir. 2020).

8

Plaintiff further maintains that the Arbitration Provision is so broad that an ordinary person could not have understood it to cover a data breach, but this argument falls short.[4] In the modern age of technology, it is difficult for a plaintiff to maintain that he or she contracted with a provider to store sensitive information, and that a breach of this personal data was not within the realm of possibilities to be covered by an arbitration provision. See Mey, 971 F.3d at 294 ("We acknowledge that construing the broadest language of this arbitration agreement in the abstract could lead to troubling hypothetical scenarios. But the question before us today is not abstract; it is tethered to the facts of this dispute and the categories of claims specifically included in this arbitration agreement." (internal citations and quotation marks omitted)); see also Purvis v. Aveanna Healthcare, LLC, 563 F. Supp. 3d 1360, 1369 (N.D. Ga. 2021); In re Brinker Data Incident Litigation, 3:19-cv-686-J-32MCR, 2020 WL 691848, *7-8 (M.D. Fl. Jan. 27, 2020). Indeed, Plaintiff makes certain claims in which it may be necessary to establish this type of breach was foreseeable, at least by Defendant.[5] Additionally, Plaintiff had the option to end his relationship with Defendant, consistent with the terms of the contractual relationship and notices received, and select another wireless provider.

Considering all of this, the Court finds there is a valid and enforceable Arbitration Agreement between Plaintiff and Defendant.

---

[4] Although Plaintiff makes this argument related to unconscionability and enforceability, the argument could be considered under the scope of the Arbitration Agreement analysis. To the extent this was Plaintiff's intent, the Court would make the same finding in considering Plaintiff's argument as to the scope of the Arbitration Agreement.

[5] To be clear, the Court makes no findings on foreseeability of the data breach in the context of a negligence claim or otherwise. That is a question to be resolved at arbitration in this specific dispute. The Court's analysis here is limited to addressing the validity and scope of the Arbitration Provision.

## 2. Scope of the Arbitration Agreement

Next, the Court turns to the arguments related to whether Plaintiff's claims are in the scope of the Arbitration Agreement. In the Fourth Circuit, courts follow a two-step framework in assessing whether a dispute is arbitrable. Peabody Holding Co., LLC v. United Mine Workers of Am., 665 F.3d 96, 101 (4th Cir. 2012). "First, we determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." Id. (emphasis in original). "Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable." Id. "[T]he question of who decides arbitrability is itself a question of contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 527 (2019); Peabody Holding Co., 665 F.3d at 102. Here, the parties agreed that all issues are for the arbitrator to decide, except that only a court can decide, among others, issues relating to the scope of the Arbitration Provision and whether a dispute can or must be brought in arbitration. (Doc. No. 9-9 at 4; Doc. No. 9-4 at 15). Thus, the Court must determine whether the Arbitration Agreement covers the dispute at issue here.

The Arbitration Agreement expressly provides that AT&T and Plaintiff "agree to arbitrate all disputes and claims between [AT&T and Plaintiff]," including "claims arising out of or relating to any aspect of the relationship between [AT&T and Plaintiff.]" (Doc. No. 9-9 at 2; Doc. No. 9-4 at 14). The Arbitration Agreement expressly states that the agreement to arbitrate is intended to be broadly interpreted. (Doc. No. 9-9 at 2; Doc. No. 9-4 at 14). Where "a contract contains an arbitration clause, 'a presumption of arbitrability exists,' and [to avoid arbitration] there must be 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Krueger v. Angelos, 26 F.4th 212, 217 (4th Cir. 2022) (quoting AT&T Techs., Inc., v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). "Doubts should be resolved in

10

favor of coverage." Id.

Here, the Court finds that Plaintiff's claims are within the scope of the Arbitration Agreement because the language covers "all disputes and claims." (Doc. No. 9-9). Plaintiff's claims also directly arise out of and relate to the relationship between AT&T and Plaintiff. But for the contract between Plaintiff and AT&T for wireless telephone services, Plaintiff would not have stored his personal information with Defendant. In addition, Plaintiff asserts breach of contract claims against Defendant and argues that Defendant breached its duty to protect the information it collected from Plaintiff in the course of their contractual relationship; this demonstrates the relationship between the contract and this dispute. (Doc. No. 1 ¶¶ 137-139). Due to this, the Court finds Plaintiff's claims are in the scope of the Arbitration Agreement, and the claims should be arbitrated consistent with the terms.[6]

For these reasons, Defendant's Motion to Compel Arbitration and Stay Claims is granted.

**ORDER**

1. For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Claims is **GRANTED**.

---

[6] Plaintiff also argues the FAA does not apply arguing that Plaintiff's claims do not "arise out of" the contracts containing the Arbitration Agreement or the transaction. (Doc. No. 12). However, Plaintiff's argument misses the mark and is contrary to caselaw. Concepcion, 563 U.S. at 344-46; Mey, 971 F.3d at 292 (applying the FAA and holding express language of arbitration agreement applied to affiliate, noting "[n]othing about the phrase is limited to disputes or claims arising out of or relating to the underlying contract or the provision of wireless service."). Even assuming arguendo that Plaintiff's position is legally correct, for the reasons discussed herein, the Court finds that Plaintiff's claims would not have arisen but for his contract with AT&T, and the FAA therefore applies. Further, North Carolina contract law mandates the same result based on the plain, unambiguous language of the Arbitration Agreement.

2. The parties shall submit their dispute to arbitration according to the terms of their agreement. This matter is **STAYED** pending arbitration. The parties shall file a status report within ninety days of this Order and each ninety days thereafter.

3. The Clerk is directed to send copies of this Order to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED.**

Signed: August 24, 2023

Susan C. Rodriguez
United States Magistrate Judge